UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MELISSA KAY MARCHOK, | ) Case No. 5:16CV2901 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) REPORT AND RECOMMENDATION |

Plaintiff Melissa Kay Marchok ("Marchok" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On September 24, 2013, Marchok protectively filed an application for a POD and DIB, alleging disability beginning December 20, 2012. (R. 9, PageID #: 129, 268-271, 307.) Marchok's application was denied initially and upon reconsideration. (R. 9, PageID #: 129, 201,

189-200, 220, 202-219.)  Thereafter, Marchok filed a written request for a hearing before an administrative law judge.  (R. 9, PageID #: 116-117.)

An Administrative Law Judge ("the ALJ") held the hearing on November 9, 2015.  (R. 9, PageID #: 150-188.)  Marchok appeared at the hearing, was represented by counsel, and testified. (*Id.* at 152, 157-182.)  A vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 153, 183-187.)  On December 10, 2015, the ALJ found Marchok was not disabled.  (R. 9, PageID #: 129, 143.)  The Appeals Council denied Marchok's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 9, PageID #: 54-57.)

On December 1, 2016, Marchok filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case. Marchok presents the following legal issues for the court's review:  "Whether the Administrative Law Judge erred in rejecting the opinions of plaintiff's treating physicians and whether the ALJ's credibility assessment is flawed."  (R. 11, PageID #: 689.)

## II.  PERSONAL BACKGROUND INFORMATION

Marchok was born on August 17, 1966, and was 46 years old on the alleged disability onset date.  (R. 9, PageID #: 141, 268, 307.)  Accordingly, Marchok was considered a younger individual age 45-49 for Social Security purposes.  *See* 20 C.F.R. § 404.1563.  Marchok has a high school education, with two years of college, and is able to communicate in English.  (R. 9, PageID #: 141, 310, 312.)  Marchok had past relevant work as a veterinary technician.  (R. 9, PageID #: 141, 159-161.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Marchok's brief alleging error by the ALJ. As noted earlier, Marchok applied for DIB benefits on September 24, 2013, alleging disability beginning December 20, 2012. (R. 9, PageID #: 268, 307, 129.) Marchok listed her physical or mental conditions that limit her ability to work as: "depression spinal stenosis pain knee injury feet [tendinitis]." (R. 9, PageID #: 311.) Because Marchok's first assignment of error concerns the opinions of three doctors (R. 11, PageID #: 696-697), particularly concerning her back and knee pain (*id.* at 691, 697, 702), the court will focus on their treatment of Marchok.

### A. Dr. Hamler

On January 31, 2012, Marchok began treating with Scott T. Hamler, M.D. (R. 9, PageID #: 466-468, 526.) At her initial visit, Marchok stated that she wanted to restart some of her previous medications. *Id.* at 466. She reported a history of chronic lumbar pain, hypertension, and diabetes, but reported "no specific complaints" at that time, "she just doesn't feel well." *Id.* at 466-467. The doctor ordered a glycated hemoglobin test. *Id.* at 468.

Dr. Hamler ordered an MRI of Marchok's right knee because of knee pain and internal derangement. (R. 9, PageID #: 492-493.) The MRI was performed on June 27, 2012, and revealed a small tear within the anterior horn/root of the lateral meniscus, and tricompartamental osteoarthritis. *Id.* at 493.

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

Another MRI was performed on Marchok's foot[2] per Dr. Hamler's order on May 10, 2013.  (R. 9, PageID #: 446-447.)  The MRI showed a small amount of fluid in certain tendon sheaths, suggesting tenosynovitis.  *Id.* at 447.  There was no abnormal intrinsic signal to indicate a tendon tear.  *Id.*

Dr. Hamler completed a "Physical Medical Source Statement" form regarding Marchok on May 6, 2014.  (R. 9, PageID #: 526-529.)  He stated that Marchok was diagnosed with chronic lumbar pain, knee pain, and hypertension.  *Id.* at 526.  Dr. Hamler indicated that Marchok was stable with medication, but still limited by fatigue, drowsiness, and pain.  *Id.*  Dr. Hamler opined that Marchok can sit for two hours at a time, but can only stand for 15 to 20 minutes at one time.  *Id.* at 527.  Dr. Hamler indicated that Marchok can sit for about two hours total in an 8-hour workday, stand or walk for less than two hours, would need a job that permits shifting positions and includes periods of walking around, every twenty minutes.  *Id.*  Dr. Hamler also indicated that Marchok would need to take unscheduled breaks on a daily basis, due to chronic fatigue and pain, and would be off-task about 5% of a typical workday.  *Id.* at 527, 529.  Dr. Hamler opined that Marchok did not need to elevate her legs with prolonged sitting, and did not need an assistive device for walking.  *Id.* at 528.  He indicated that Marchok could tolerate moderate stress (normal work), and  estimated that Marchok was likely to be absent from work due to her impairments on average more than four days per month.  *Id.* at 529.

---

[2]  The record is unclear concerning which foot was examined here. Marchok's brief states the MRI was for her right foot pain.  (R. 11, PageID #: 691.)  The medical records also state that the "Reason for Exam" was "Foot Pain Right" and "Peroneal Tendonitis of Right Lower Extremity." (R. 9, PageID #: 446.)  However, the Report states that the clinical indication was "Lateral left foot pain for four months.  Noncontrast MRI of the left foot.  Multiplanar multisequence of the left foot performed."  *Id.*

At a July 10, 2014, visit with Dr. Hamler, a neurological exam indicated mildly antalgic gait, but no gross motor or sensory deficit. (R. 9, PageID #: 593.) Dr. Hamler commented that Marchok's reported pain was out of proportion to the examination. *Id.*

## B. Dr. Blanda

On July 25, 2012, Marchok visited orthopedist Joseph Blanda, M.D., for right knee pain. (R. 9, PageID #: 433-434.) Marchok had full range of motion, but Dr. Blanda noted tenderness, mild degenerative disc disease and obesity. *Id.* at 433-434. Dr. Blanda's treatment plan included rest, ice, elevation, decreased activity, and a weight loss plan. *Id.* at 433. He gave Marchok an intra-articular injection. *Id.* Marchok returned to Dr. Blanda for a follow-up visit on October 10, 2012, at which time she reported that the July injection had helped. *Id.* at 432. Dr. Blanda gave her another injection on that date. *Id.* at 431.

About eighteen months later, on April 8, 2014, Dr. Blanda completed a "Physical Medical Source Statement" form regarding Marchok. (R. 9, PageID #: 518-521.) He stated that Marchok had chronic right knee DJD (degenerative joint disease). *Id.* at 518. Dr. Blanda opined that Marchok can sit for twenty minutes at a time, stand for fifteen minutes at a time, sit for less than two hours total in an 8-hour workday, and stand or walk for less than two hours as well. *Id.* at 519. The doctor checked the form indicating that Marchok would need a job that permits shifting positions and periods of walking around. *Id.* Dr. Blanda indicated that Marchok would need to walk around every fifteen minutes, and each time would walk for ten minutes. *Id.* There appears to be an internal contradiction between certain limitations set forth by Dr. Blanda,

namely, Marchok is limited to standing or walking no more than two hours per workday, yet apparently she must take a ten minute walk every fifteen minutes.

In addition, Dr. Blanda noted that Marchok will sometimes need to take unscheduled breaks during the workday, on a daily basis, and she will have to rest "2-3 days" before returning to work. (R. 9, PageID #: 519.) Dr. Blanda opined, in contrast to the findings of her primary care physician Dr. Hamler, that Marchok did need to elevate her legs with prolonged sitting, and needed an assistive device for walking. *Id.* at 520. Dr. Blanda indicated that Marchok was only able to tolerate low-stress work, and was likely to be absent from work as a result of her impairments an average of more than four days per month. *Id.* at 521.

C.  Dr. Anwar

On July 23, 2014, Kashif Anwar, M.D., conducted a consultative physical examination of Marchok. (R. 9, PageID #: 614-622.) Marchok self-reported her history to Dr. Anwar, and stated that her back and right knee were currently bothering her the most. *Id.* at 614. Manual muscle testing showed normal strength in her arms, hands, legs and feet. *Id.* at 619. She displayed some limits in range of motion in the lumbar spine and hips. *Id.* at 621-622. An X-ray of Marchok's lumbar spine showed "moderate multilevel degenerative disease." *Id.* at 618. Dr. Anwar's impression was that Marchok had lower back pain, right knee pain, pain in both feet, and depression/anxiety. *Id.* at 616.

Dr. Anwar opined that Marchok was able to sit for thirty minutes, stand for 5 to 10 minutes, walk less than one hundred feet, and lift up to ten pounds. (R. 9, PageID #: 616-617.) Marchok should avoid steps or lengthy walking, bending, or stooping, "due to her back and right

knee pain at this time." *Id.* at 617. Dr. Anwar wrote that Marchok can work up to one to two hours in a workday, with frequent breaks to allow her to move around. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the December 10, 2015, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since December 20, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder, anxiety disorder, panic disorder, peroneal tendinitis right lower extremity, obesity, osteoarthritis bilateral knees, fibromyalgia, and lumbar degenerative disc disease status-post surgical intervention (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently push and pull with the lower extremity. She can alternate between sitting and standing at her discretion, but would remain at her work station while doing so. She can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch and crawl. The claimant can never climb ladders, ropes or scaffolds, and frequently balance. She must avoid concentrated exposure to hazards. The claimant can perform simple, routine tasks performed in a static environment with no strict time or strict high production quotas, and incidental to no contact or interaction with the general public and frequent interaction with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on August 17, 1966, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2012, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 9, PageID #: 131-132, 134, 141-142.)

# V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v.*

*Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has

outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful
> activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the
> claimant must show that he suffers from a severe medically determinable physical
> or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that
> his impairment meets or medically equals one of the impairments listed in 20
> C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii).
> Fourth, the ALJ determines whether, based on the claimant's residual functional
> capacity, the claimant can perform his past relevant work, in which case the
> claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines
> whether, based on the claimant's residual functional capacity, as well as his age,
> education, and work experience, the claimant can make an adjustment to other
> work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden
> shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d
> 525, 529 (6th Cir. 1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).


## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of

whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are

supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399,

405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence"

has been defined as more than a scintilla of evidence, but less than a preponderance of the

evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health &*

*Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a

nature that a reasonable mind might accept it as adequate support for the Commissioner's final

benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich. Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII.  ANALYSIS

Marchok presents the following legal issues for the court's review: "Whether the Administrative Law Judge erred in rejecting the opinions of plaintiff's treating physicians and whether the ALJ's credibility assessment is flawed." (R. 11, PageID #: 689, 694-704.) The ALJ found Marchok had severe impairments which limit her to sedentary work, where she can alternate between sitting and standing at her discretion, with the additional limitations set out in the RFC finding above. (R. 11, PageID #: 695; *see generally* R. 9, PageID #: 134.) Marchok contends, however, that the ALJ erred by not according significant weight to the opinions of her

treating physicians, which she asserts are consistent with the opinion of the consultative examiner, the objective findings, and her consistent complaints.  (R. 11, PageID #: 695.)

## A.  Treating Physician Opinions

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner,* 710 F.3d 365, 375 (6th Cir. 2013); *Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection that physicians who have a long-standing treatment relationship with an individual are often well equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544.

In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  *Vance v. Commissioner,* No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner,* 336 F.3d 469, 477 (6th Cir. 2003)).  "If the

_____

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). (quoting *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p). The obligation to provide good reasons permits meaningful and efficient review of the ALJ's application of the treating physician rule. *Cole*, 661 F.3d at 938.

Marchok argues that the ALJ's determination that she is capable of working is not supported by substantial evidence, because three different physicians agree that she is disabled. (R. 11, PageID #: 696.) Marchok states that treating physicians Dr. Hamler and Dr. Blanda, along with consultative examiner Dr. Anwar, all agree that Marchok cannot work in a full-time competitive position due to her symptoms. *Id.*

The court notes, at the outset, that the issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Vance*, 2008 WL 162942, at *3; *Walker v. Secretary, HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992).

Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference. *Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004); *see generally* 20 C.F.R. §§ 404.1527(d)(1), (3).

1.    Dr. Hamler

The court agrees that Dr. Hamler is a treating physician. The ALJ's decision first set forth the limitations proposed in Dr. Hamler's May 2014 opinion (R. 9, PageID #: 138, citing PageID #: 527-529), and then addressed his opinion as follows:

> This opinion is . . . not entitled to controlling weight. While Dr. Hamler did regularly treat the claimant's back and knee pain in 2013 and 2014, this opinion is inconsistent with his own objective findings. In fact, Dr. Hamler has noted that the claimant's pain seemed to be out of proportion from her physical examination [12F/40]. In an exam from October 28, 2013, Dr. Hamler noted a normal appearance but an antalgic gait. The remainder of the exam was essentially normal with no gross motor or sensory deficits. Claimant showed no edema or synovitis over the right foot. She was alert oriented with good eye contact and speech. These findings are typical of Dr. Hamler's exams (12F). The exam prior to this opinion did differ slightly in that it showed decreased range of motion and tenderness over the claimant's lumbar spine. However, it again noted only a mildly antalgic gait, no gross motor/sensory deficits, no clubbing, no edema, no weakness or other findings (12F/36). Thus, I afford this opinion little weight.

(R. 9, PageID #: 138-139.)

Marchok concedes that the ALJ provided reasons to reject the doctor's opinions (R. 11, PageID #: 696, 700), but argues that "the reasons should not be found good reasons when the record is considered as a whole." (R. 11, PageID #: 696.) Marchok notes that Dr. Hamler opined that she is limited to less than sedentary work, needs to be able to shift positions at will, and will need unscheduled breaks throughout the day. *Id.* at 697. Marchok questions the ALJ's determination that Dr. Hamler's opinion is inconsistent with the doctor's own objective findings. Marchok further suggests the ALJ's analysis was limited and considered only one exam—

referencing the ALJ's citation to the October 28, 2013 exam. *Id.* The ALJ indicated the October 23, 2013 record states Marchok had a normal appearance, but an antalgic gait and the remainder of the exam was essentially normal. (R. 9, PageID #: 138.) Contrary to Marchok's position, the ALJ's decision considered the entirety of Dr. Hamler's office treatment records, by citing transcript exhibit "12F,"[4] and highlighted the aforementioned October 28th exam record as a representative example after determining that the "findings are typical of Dr. Hamler's exams." (R. 9, PageID #: 138-139.) The ALJ further supported his finding by reference to an "exam prior to this opinion" (R. 9, PageID #: 139, citing 12F/36), namely, an April 29, 2014 exam that again found Marchok in no acute distress, with a mildly antalgic gait, but no edema and no muscle weakness. (R. 9, PageID #: 589.)

The court does not agree with Marchok's argument that the ALJ failed to support the decision, not to give controlling weight to Dr. Hamler's opinion, with good reasons. (R. 11, PageID #: 697, 700.) The ALJ's reasoning as set forth in the decision is supported by evidence in the record, and is sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ identified specific discrepancies between Dr. Hamler's opinion and his own clinical observations. (R. 9, PageID #: 138-139.) The decision of the ALJ is supported by substantial evidence.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or

---

[4] Transcript Exhibit 12F contains fifty-nine pages of records from Dr. Hamler. (R. 9, PageID #: 554-612.)

substantial evidence might support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

### 2. Dr. Blanda

A treating physician is defined as a physician who has provided medical treatment or evaluation, and who has an "ongoing treatment relationship" with the patient. *Daniels v. Commissioner*, No. 04-5709, 2005 WL 2739084, at *5 (6th Cir. Oct. 24, 2005) (citing 20 C.F.R. § 404.1502); *Bryant v. Astrue*, No. 2:09-00093, 2010 WL 2901842, at *2 (M.D. Tenn. July 19, 2010) (citing 20 C.F.R. § 416.902). According to the medical records before the court, Marchok visited Dr. Blanda for two evaluations, within a period of three months, and Dr. Blanda administered two injections for knee pain. (R. 9, PageID #: 431, 433-434.) There is no evidence in the record of an ongoing treatment relationship beyond that brief period. *See, e.g.*, *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520 at *9 (6th Cir. Nov. 15, 2000) (TABLE, text in WESTLAW) (despite fact doctor examined claimant on three occasions, doctor did not have ongoing treatment relationship with him).

Although there is a limited treatment history, the Commissioner concedes that Dr. Blanda was a treating source. The ALJ's decision noted the brief treatment history (R. 9, PageID #: 135), set forth the limitations proposed in Dr. Blanda's April 2014 opinion (*id.* at138, citing PageID #: 519-521), and then addressed his opinion as follows:

> This opinion is not entitled to controlling weight. This extremely limiting opinion is not consistent with the claimant's course of treatment, her MRI, or the objective findings upon examination. Further, it appears that the claimant only saw Dr. Blanda a few times in 2012, and has not subsequently returned for treatment. Those records do note tenderness but they also note normal neurological findings and the claimant was working 12 hour shifts (2F). Moreover, the majority of records note normal gait, strength, sensation suggesting she is more capable than

the limits set forth by Dr. Blanda (18F/2, 14F/2, 5F2, 12F/26).  Thus, I afford this opinion little weight.

(R. 9, PageID #: 138.)

Marchok admits that the ALJ "provides reasons" to reject Dr. Blanda's opinion, but argues they are not "good reasons" when the record is considered as a whole.  (R. 11, PageID #: 696.)  She asserts that the ALJ's treatment of Dr. Blanda's opinion requires further clarification or explanation.  (R. 11, PageID #: 696.)  Marchok also contends her course of treatment is consistent with one who lives in chronic pain.  *Id.*

The court finds that the ALJ's reasons are supported by evidence in the record, and the decision of the ALJ is supported by substantial evidence.  The ALJ decided not to afford Dr. Blanda's opinion controlling weight because it was not consistent with her conservative course of treatment and objective findings, which the ALJ summarized earlier in the decision.  (R. 9, PageID #: 132, citing *e.g.* PageID #: 484; PageID #: 135.)  In addition, the ALJ concluded that Dr. Blanda's opinion was not supportable because it was inconsistent with the majority of the treatment records showing normal gait, strength, and sensation.  (R. 9, PageID #: 136, citing *e.g.* PageID #: 453, 455; PageID #: 137, citing *e.g.* PageID #: 625, 629, 634, 674; PageID #: 138, citing *e.g.* PageID #: 452, 580, 589, 593, 624.)  Those treatment records, as the ALJ determined, suggested Marchok is more capable than the limits set forth by Dr. Blanda.  (R. 9, PageID #: 138, citing to record.)  Besides the two injections, Dr. Blanda's July 2012 treatment plan simply consisted of "rest, ice, elevation, decreased activity" and a weight-loss plan.  (R. 9, PageID #: 433.)  In addition, the doctor did not indicate that claimant needed to be off work.  *Id.*  Dr. Blanda assessed "mild," rather than "moderate" or "advanced," DJD.  *Id.* at 434.  Further, the ALJ reasonably determined not to give greater weight to Dr. Blanda's opinion because the doctor

16

saw Marchok only twice in 2012 (in July and October 2012), when she was actively working, and did not exam or treat her again during the eighteen months between October 2012 and April 2014, when he provided the medical source statement. *Id.* at 135. The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence might support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

## B.  Dr. Anwar

Dr. Anwar was a consultative examiner, who performed a single physical examination of Marchok. (R. 9, PageID #: 614-622.) Based on this examination, Dr. Anwar opined that Marchok would be best suited to sedentary activities, and set forth a number of limitations (as discussed in section III.C.). *Id.* at 616-617.

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must explain any rejection of the state-agency doctor's opinions. 20 C.F.R. §§ 404.1527(c), (e)(2)(i) and (ii); SSR 96-8p. The ALJ addressed Dr. Anwar's opinion as follows:

> I afford this opinion some weight, as the claimant's treatment notes and treatment course do support limitations in the claimant's ability to sit and stand. However, the majority of Dr. Anwar's objective findings were normal, so it is not clear what his limits of only walking for ten minutes or working just 1-2 hours a day are based on. The record, the objective findings upon examination, and the claimant's course of treatment do not support these limits. There are certainly positive findings on exam that limit the claimant to sedentary but her gait, strength, sensation are intact and fail to support Dr. Answar's [*sic*] opinion (18/F2, 14F/2, 5F2, 12F/26).

(R. 9, PageID #: 137-138.)

Marchok contends that Dr. Anwar's opinion was based on his examination of her, and consideration of both subjective complaints and objective findings. (R. 11, PageID #: 696.) She contends that the ALJ's dismissal of Dr. Anwar's opinion is not sufficiently supported, and without a better explanation, the court should find that the ALJ's decision is not supported by substantial evidence. *Id.*

Again, the court finds that the ALJ's reasoning is supported by evidence in the record, and the decision of the ALJ rejecting Dr. Anwar's extreme limitations is supported by substantial evidence. The ALJ pointed to specific discrepancies between Dr. Anwar's opinion and the doctor's own objective findings (e.g., normal strength in manual muscle testing, R. 9, PageID #: 619), as well as clinical findings of other providers (R. 9, PageID #: 138, citing MER). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence might support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

## C. Credibility

The claimant argues that the ALJ's credibility assessment is flawed and not supported by substantial evidence because the ALJ did not evaluate her subjective complaints, such as pain, pursuant to SSR 96-7. (R. 11, PageID #: 701-702.) When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must determine the claimant's credibility based on a consideration of the entire case record. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007). To the extent that the ALJ's findings are based on the credibility of the claimant, those findings are accorded great

weight and deference.  *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5  (W.D. Mich. Jan. 17, 2008).  Nevertheless, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence.  *Id.*

The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record."  *Rogers*, 486 F.3d at 247-248.  SSR 96-7p also requires the ALJ explain the credibility determinations in the decision and it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Rogers*, 486 F.3d at 248.

The ALJ considers a number of factors that may or may not corroborate the claimant's allegations of pain, including:  statements from the claimant and the claimant's treating, examining, or consulting physicians; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1038 (citing 20 C.F.R. § 404.1529); *see also* SSR 96-7p, 1996 WL 374186.

The ALJ's decision set forth the two-step process used for considering the claimant's symptoms, then rendered the finding on the credibility of Marchok's statements, as follows:

> The claimant testified that she is unable to work due to chronic back and knee pain.  She stated that she had to leave her job as a vet tech due to the pain.  She

relayed that she underwent back surgery in 2005, but continues to have pain in her lower back and shooting down both legs. The claimant stated that she has trouble walking, sitting, and standing. She relayed that she could not do a "sit down" job because her knee will get stiff and she will need to stand up. In addition, the claimant stated that she is depressed and has anxiety attacks. She indicated that she has anxiety attacks in anticipation of events and going to the store. She stated she has racing thoughts, and cries 2-3 times a week.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. 9, PageID #: 135.) The ALJ then continued with an extended discussion of the medical record concerning Marchok's symptoms and treatment for back and knee pain. *Id.* at 135-137. Contrary to the assertion in Marchok's brief that "the ALJ fails to address any of [the Section 404.1529] factors when assessing Plaintiff's chronic pain" (R. 11, PageID #: 702), the ALJ discusses the evidence concerning the factors through a narrative description which extends over several pages. (R. 9, PageID #: 135-137.)

The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. The ALJ identified specific facts supported by the record that cast doubt on the severity of the disabilities alleged by Marchok. (R. 9, PageID #: 135-137.) Because "a reasonable mind might accept [the evidence] as adequate to support" the ALJ's credibility determination, the court concludes that substantial evidence supports the ALJ's finding. *Norris v. Commissioner*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).

# VIII. CONCLUSION

The undersigned recommends that the Commissioner's final decision be affirmed because the ALJ's decision relied upon good reasons for not giving controlling weight to the opinions submitted by Marchok's treating physicians and the consultative examiner. In addition, the ALJ supported the credibility assessment with substantial evidence, as further detailed above.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:   December 13, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).